UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                            :
ELIZABETH CORPORAN,                 :
                                            :         12-CV-6704 (JPO)
                           Plaintiff,   :
                                            :        <u>OPINION AND ORDER</u>
                    -v-                      :        <u>ADOPTING REPORT</u>
                                            :        <u>AND</u>
COMMISSIONER OF SOCIAL SECURITY,  :        <u>RECOMMENDATION</u>
                                            :
                         Defendant.  :
-------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

       Plaintiff Elizabeth Corporan filed this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits.

       On March 27, 2014, Judge Netburn issued a Report and Recommendation addressing both parties' motions for judgment on the pleadings. (Dkt. No. 44 ("the Report").) Judge Netburn concluded that the administrative law judge (the "ALJ") failed to adequately develop the record, leaving her unable to determine whether the ALJ's decision was supported by substantial evidence. Judge Netburn recommended that that the case be remanded to the Commissioner for further development of the record.

       On May 21, 2014, the Commissioner filed objections to the Report. (Dkt. No. 47 ("Def. Obj.").) The Commissioner argues that the decision to deny Corporan benefits is supported by substantial evidence and therefore should be affirmed. Corporan has filed no objections to the Report.

       For the reasons that follow, the Court adopts the Report and remands to the Commissioner.

**I.      Standard of Review**

The district court is entitled to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Portions of the magistrate judge's findings or recommendations to which objection is made, if any, are reviewed *de novo* by the district court. *Id.* However, only objections "clearly aimed at particular findings" in a magistrate judge's report earn *de novo* review. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Where a party does not object, or files objections of a merely "general" or "conclusory" nature, courts review reports for clear error. *Legall v. Colvin*, No. 13-CV-1426, 2014 WL 4494753, at *1 (S.D.N.Y. Sept. 10, 2014).

Both Corporan and the Commissioner move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 19 & 35.) A Rule 12(c) motion will be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Wells Fargo Bank, Nat'l Ass'n v. Davidson Kempner Capital Mgmt. LLC*, ___ F. Supp. 2d ___, 2014 WL 1883547, at *2 (S.D.N.Y. May 12, 2014) (internal quotation marks omitted).

The scope of review of a Commissioner's decision to deny disability benefits is limited. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g). "[Substantial evidence] is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (alteration in original) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A decision supported by substantial evidence will be upheld even where there is substantial evidence in support of the plaintiff's position, or where the court would have reached a decision different than the Commissioner's. *Alves v. Colvin*, No. 13-CV-3898, 2014 WL 4827886, at *5 (S.D.N.Y. Sept. 29, 2014).

However, a threshold question for the reviewing court is whether "the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alteration in original). Remand is appropriate if the reviewing court concludes that the claimant did not receive a full and fair hearing. *Selmo v. Barnhart*, No. 01-CV-7374, 2002 WL 31445020, at *7 (S.D.N.Y. Oct. 31, 2002).

## II.     Discussion

Judge Netburn's Report describes the factual and procedural background of this case in great detail, and the Court need not recount it here.

The Commissioner identifies the following three alleged errors in the Report: (1) that the Report unreasonably imposed a "doubly heightened duty" on the ALJ to develop the record (Def. Obj., at 4–8); (2) that the Report erroneously treated Dr. Jorge Farrat's medical opinion as that of a treating physician, even though he examined Corporan only once and did not have an ongoing treatment relationship with her (*Id.* at 9–10); and (3) that the Report incorrectly concluded that, in failing to obtain certain medical records, the ALJ did not meet his duty to develop the record (*Id.* at 10–17).

### A.     The ALJ's Duty to Develop the Record

The Report concluded that, in the circumstances of this case, the ALJ's duty to develop the record was "doubly heightened." Two factors gave rise to this enhanced duty: Corporan's claim of a mental (rather than physical) impairment, and her *pro se* status at the ALJ hearing.[1]

---

[1] In its brief, the Commissioner objects that the Report imposed "a 'doubly heightened duty' on the Commissioner to develop the record whenever a claimant asserts disability based on a mental impairment." (Def. Obj., at 4.) This mischaracterizes the Report. The Report clearly premised the ALJ's "doubly heightened duty" on the nature of Corporan's alleged impairment *and* the absence of counsel on her part at the ALJ hearing. (Report, at 26–28; *see also id.* at 34, 36, 39.)

3

(Report, at 26–28.) The Report reasoned that a claim based on a mental disability requires "a robust examination that is sensitive to the dynamism of mental illnesses and the coping mechanisms that claimants develop to manage them." (*Id.* at 27.)

The Commissioner objects on this point. In the Commissioner's view, the proposition that an ALJ's duty to develop the record varies based on the nature of a claimant's alleged impairment is novel and without any basis in law. (Def. Obj., at 8.)

The Court adopts the Report's conclusion for the reasons explained below. The law in this circuit and elsewhere points to the commonsense conclusion that, where a claimant is both unrepresented by counsel and obviously handicapped by a mental impairment, an ALJ bears a doubly heighted duty to develop the record.

The Second Circuit has long recognized that a "social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran*, 569 F.3d at 112 (internal quotation marks omitted); *accord Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). This duty to develop the record has its roots in the Commissioner's regulatory obligation to ascertain a claimant's complete medical history before making a disability determination. *Pratts*, 94 F.3d at 37 (citing 20 C.F.R. § 404.1512(d)-(f) (2014)).

Equally well established is the principle that when a disability claimant is unrepresented, an ALJ's duty to develop the record is "heightened." *Cruz v. Sullivan*, 912 F.3d 8, 11 (2d Cir. 1990); *accord Echevarria v. Sec'y of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). In particular, the ALJ is required "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Cruz*, 912 F.3d at 11 (internal quotation marks omitted). The reviewing court, in turn, must make a "searching investigation of the record" to

ensure that the claimant received "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (internal quotation marks omitted).

At the same time, a claimant's *pro se* status is only one of many impairments that courts consider in reviewing an ALJ's decision to deny benefits. In *Gold v. Sec'y of Health, Ed. & Welfare*, 463 F.2d 38 (2d Cir. 1972), for example, the court determined that it had an obligation to make a "searching investigation" of the record not merely because the claimant was without counsel at the ALJ hearing, but also because she was in "ill health" and had an "inability to speak English well." *Id.* at 43; *accord Cruz*, 912 F.3d at 11. Likewise, in *Moran*, the court faulted the ALJ for inadequately assisting the *pro se* claimant in light of his "manifest debilitating condition" and "the age of the factual issues [the claimant] was required to address." 569 F.3d at 114. These impediments, the court explained, made it "especially important for the ALJ to help [the claimant] develop a testimonial record of the critical events." *Id.*

That a claimant's mental illness may, in the same way, impede her from presenting her own case and necessitate greater assistance from the ALJ is evident. And other courts agree. In *Morlando v. Astrue*, No. 3:10-CV-1258, 2011 WL 4396785 (D. Conn. Sept. 20, 2011), for example, Judge Kravitz held that the ALJ was bound by a "doubly-heightened duty" to develop the record because the claimant both lacked counsel and suffered from "cognitive impairments and mental illness." *Id.* at *4. In so concluding, Judge Kravitz heeded the Second Circuit's instruction in *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 (2d Cir. 2002), that "courts should exercise an extra measure of caution when adjudicating the claims of a litigant whose mental capacity is in question." *Id.* at 514. *Chapman* itself addressed a claim for disability benefits under the Employee Retirement Income Security Act, but it cited with

5

approval a Ninth Circuit decision holding that "independent of whether a Social Security applicant is represented by counsel, an administrative law judge's duty to develop the record is 'especially important' in cases involving mental impairment." *Id.* (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991)).

The Ninth Circuit is far from alone in this conclusion. Several circuits share the view that an ALJ's duty to develop the record is more pronounced when a claimant lacks counsel and suffers from a mental impairment. *See, e.g.*, *Thompson v. Sullivan*, 933 F.2d 581, 586 (7th Cir. 1991) ("When a claimant is both unrepresented *and* suffers from a mental impairment . . . the ALJ's duty to carefully develop the record is even greater.") (emphasis in original); *Krishnan v. Barnhart*, 328 F.3d 685, 695 (D.C. Cir. 2003) ("[The] duty [to develop the record] is heightened if 'the claimant is unrepresented by an attorney,' . . . or suffers from mental illness.") (citation omitted); *Deblois v. Sec'y of Health & Human Servs.*, 686 F.2d 76, 81 (1st Cir. 1982) ("[T]he [Comissioner]'s responsibility to develop evidence is even greater when the claimant is obviously mentally impaired."). In other words, the principle that an ALJ is under a greater responsibility to elicit relevant evidence when a claimant is "too ill to act in his own best interests" has widespread acceptance. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992); *see also* SSR 83-20 ("Because mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment.").

Here, Corporan sought disability benefits based on her mental condition, which consists of severe depression, difficulties with memory, and recurring and painful headaches. (Report, at 5.) In her disability application, Corporan stated that she often forgets to take her medication, is

unable to go out alone, and has trouble sleeping because of her depression. (*Id.*) Indeed, the ALJ himself recognized that Corporan's mental impairments were "severe." (Dkt. No. 17, Administrative Record ("AR"), at 9.) These impairments, along with Corporan's *pro se* status, gave rise to a doubly heightened duty to affirmatively develop the factual record.

### B. Dr. Farrat's Evidence

Next, the Commissioner contends that the Report erred in its treatment of the opinion of Dr. Jorge Farrat, a physician who treated Corporan through the Federation Employment and Guidance Service (FEGS) program. According to the Report, Dr. Farrat did not have an "ongoing treatment relationship" with Corporan, and the Commissioner argues that the Report wrongly "recommend[ed] that the Court find that the ALJ erred in failing to accord [Dr. Farrat's] opinion the deference accorded a treating physician's opinion." (Def. Obj. 9–10.)

The "treating physician" rule requires that the opinion of a claimant's treating physician be accorded "controlling weight" if it is well supported and not inconsistent with other substantial evidence in the record. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(c)(2). This is so because a treating physician's opinion is more likely "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). A physician is considered a treating source if she has performed a medical treatment or evaluation of the claimant and has, or has had, an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

As the Report notes, Dr. Farrat examined Corporan at least once, on June 10, 2009. After that examination, he referred Corporan for a "Phase II" evaluation, which took place on June 22,

2009. It is unclear whether that evaluation was performed by Dr. Farrat or another physician.[2] Following the Phase II examination, Dr. Farrat completed a FEGS evaluation form, in which he diagnosed Corporan with "major depression, generalized anxiety disorder, and alcohol use, in addition to a skin disorder, high levels of lipids in the blood, and mild anemia."[3] (Report, at 9.)

It is unclear whether Dr. Farrat was, in fact, a treating source within the meaning of the relevant regulations. The Commissioner correctly notes that a physician who examines a claimant "once or twice" is typically not considered a treating source. *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983). That appears to be the case here. However, in light of the possibility that further evidence may emerge on remand, the Court leaves Dr. Farrat's status as a matter for the ALJ to resolve.[4]

In any event, the Report correctly found that the ALJ erred in disregarding Dr. Farrat's evidence. Even if Dr. Farrat is not considered a treating source, it was an error for the ALJ to omit any mention of his examination in his decision.[5] *See* 20 C.F.R. § 404.1527 (requiring the ALJ to "explain in the decision the weight given to the opinions of . . . nontreating sources");

---

[2] The Report rightly notes that the ALJ was required to resolve this ambiguity in the record. (*Id.* at 40–41 n.27.)

[3] The Report states that, the Phase II evaluation aside, Dr. Farrat conducted "two examinations" of Corporan. (Report, at 40.) However, the record suggests that Corporan had only two examinations at FEGS: one on June 10, by Dr. Farrat, and a Phase II evaluation on June 22, by Dr. Farrat or another physician. (*See* AR, at 174–76.)

[4] The Commissioner points to the fact that, even in her own brief, Corporan "does not allege that Dr. Farrat was a treating physician." (Def. Obj., at 9.) The Court does not share that reading of Corporan's brief. (*See* Dkt. No. 35, Memorandum of Law in Support of Plaintiff's Cross-Motion for Judgment on the Pleadings, at 24–25 ("The ALJ compounded his error in failing to seek medical information about Ms. Corporan from *treating mental health sources*, by ignoring, in large part, the results of an extensive evaluation of Ms. Corporan undertaken by the FEGS/WeCARE group.") (emphasis added).)

[5] It appears that the ALJ's error was based on his mistaken belief that the FEGS records consisted exclusively of reports by social workers, not physicians. (Report at 41, n.27.)

*Cichocki v. Astrue,* 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) ("The ALJ is required to consider all available evidence, including . . . statements from . . . the claimant's treating or nontreating source . . . ."); *Pagan v. Chater,* 923 F. Supp. 547, 556 (S.D.N.Y. 1996) ("The ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error."); *Correale-Englehart v. Astrue,* 687 F. Supp. 2d 396, 422 (S.D.N.Y. 2010) ("The ALJ must also adequately explain his reasoning in making the findings on which his ultimate decision rests, and in doing so must address all pertinent evidence."). The failure to consider and weigh Dr. Farrat's evidence constitutes plain error and warrants remand.

### C. The Missing Medical Records

Finally, the Commissioner argues that the Report erred in finding that the ALJ failed to make sufficient efforts to obtain relevant medical documents. Analyzed against the backdrop of the ALJ's affirmative, doubly heightened duty to develop the record, the Commissioner's objections are, for the most part, unavailing. The Court addresses the Commissioner's specific arguments below.

#### 1. Bowen Center

According to the Report, the missing records from the Emma L. Bowen Community Service Center (the "Bowen Center"), also known as the Upper Manhattan Health Center, constitute "the most significant gap in the record" because of their likely probative value and the length of Corporan's treatment there. (Report, at 31.)

The Report details this treatment. In brief, Corporan was initially assessed at the Bowen Center by psychiatrist Dr. R. Pierre-Louis on July 30, 2009. (*Id.* at 10.) She had monthly meetings with him for medication management until she was discharged from the Bowen Center in March 2010. (*Id.* at 10–11.) Corporan also attended, albeit inconsistently, individual and

group counseling sessions at the Bowen Center multiple times a week. (*Id.* at 11.) However, the only documents in the record from the Bowen Center were Dr. Pierre-Louis's initial assessment in July 2009 and a termination summary prepared in March 2010 by a social worker. Corporan drew the missing records to the ALJ's attention during the hearing. In response, he noted "now that's important," but gave Corporan only one day to obtain and deliver the records.

The Commissioner disputes none of this. Instead, she argues that the Commissioner made adequate attempts to obtain documents from the Bowen Center and that the record was fully developed in this regard. (Def. Obj., at 11–12.) The Commissioner says that she contacted the Bowen Center to request records twice, both times unsuccessfully. (*Id.* at 11.) She also says that the ALJ afforded Corporan the opportunity to submit additional evidence from the Bowen Center after the hearing. (*Id.*)

These arguments are unavailing. The central importance of the Bowen Center records demanded a meaningful attempt by the ALJ to retrieve those documents. The Commissioner could have renewed its request for the records with the Bowen Center. It did not. The ALJ could have given Corporan more than one day to submit any additional records from the Bowen Center, or offered to assist Corporan in obtaining the records. He did not.[6] (AR, at 35–36.) The ALJ could have exercised his discretion to "stop the hearing temporarily and continue it a later date" in light of the missing records. 20 C.F.R. § 404.944. He did not. In short, the ALJ had several options available to him but did not exercise any of them.[7] More was required to satisfy his duty to develop the record.

---

[6] Indeed, the Commissioner's own difficulty in procuring the records from the Bowen Center makes the ALJ's failure to give Corporan greater leeway all the more problematic. (Report at 38, n.23.)

[7] The Commissioner argues that, by twice requesting records from the Bowen Center, it made "every reasonable effort" to obtain the relevant documents. (Def. Obj., at 11 (citing 20 C.F.R. §§

10

The Court rejects the Commissioner's objections on this ground.

### 2. St. Luke's

The Report identifies missing records with respect to four events during the course of Corporan's treatment at St. Luke's Roosevelt Hospital ("St. Luke's"): (1) an appointment on November 16, 2009; (2) an appointment on January 11, 2010; (3) a head MRI/CT scan in December 2009; and (4) participation in an outpatient alcohol treatment program sometime after March 19, 2010. (Report, at 7.) The Commissioner objects on the grounds that it requested and received documents twice from St. Luke's, on October 13 and November 21, 2009, and that it received no documentation with regard to a November 16 appointment. Further, the Commissioner says that beyond Corporan's own statements, there is no indication that these events in fact took place.

The Court adopts the Report's findings on this point in part. The Commissioner's explanation for the absence of records about Corporan's purported appointment on November 16, 2009 is reasonable. St. Luke's ought to have released any such records in the documents it produced in response to the Commissioner's November 21 request; one might reasonably conclude from the fact that it did not do so that no appointment occurred on that date. However,

---

404.1512(d), 416.912(d)).) But the regulations spell out only minimum requirements. Where, as here, a doubly heightened duty applies, greater efforts are necessary. *Cf. Jones v. Apfel*, 66 F. Supp. 2d 518, 523–24 (S.D.N.Y. 1999) ("'Every reasonable effort' has been defined by the regulations to require an initial request for medical evidence from the medical source, and a follow-up request, followed by a ten-day extension, if the requested evidence has not been received within ten to twenty calendar days. However, in cases involving pro se plaintiffs, this affirmative duty is heightened. The ALJ must take all reasonable steps to obtain past and current medical evidence and assessments from treating sources identified by a pro se plaintiff, in order to complete the administrative record. 'Reasonable efforts' in this context entails more than merely requesting reports from the treating physicians. It includes issuing and enforcing subpoenas requiring the production of evidence, as authorized by 42 U.S.C. § 405(d), and advising the plaintiff of the importance of the evidence. The ALJ must also enter these attempts at evidentiary development into the record.") (citations omitted).

the Commissioner's failure to make subsequent inquiries about the later treatment Corporan said she received at St. Luke's is unexplained. Real efforts to obtain documents related to this treatment are warranted on remand.

### 3.     FEGS

The sole FEGS records that are missing pertain to an appointment that Corporan stated she had in September 2009. (*Id.* at 30.) The Commissioner says that no records about such an appointment were produced when the Commissioner requested and obtained 70 pages of records from FEGS in October 2009. (Def. Obj., at 13.)

This objection is a fair one. The Court is persuaded that the Commissioner has made reasonable efforts with regard to these records. However, as explained above, on remand the ALJ should attempt to ascertain who conducted Corporan's Phase II examination and weigh this and other available evidence from FEGS.

### 4.     Metropolitan Hospital

At the time of the hearing, Corporan was undergoing treatment at the Metropolitan Hospital Center ("Metropolitan Hospital"). (Report, at 15.) However, the only document in the record related to this treatment is a "Verification of Appointment" form, dated September 23, 2010. (*Id.* at 15.) This form is merely a record attesting to the fact that Corporan attended her appointment; it says nothing about the substance of the appointment or Corporan's treatment at the Metropolitan Hospital more generally. (*See* AR, at 118.) Nonetheless, the Commissioner disputes the Report's conclusion that the absence of other records deprived Corporan of a full and fair hearing. (Report, at 14.)

The Commissioner's arguments are unpersuasive. A substantive record relating to Corporan's September 23 appointment was likely to be probative and should have been sought.

Moreover, the ALJ could have requested a retrospective report from Metropolitan Hospital about whether Corporan was disabled on her stated onset date. (*Id.* at 32.) The Commissioner's argument that there was sufficient evidence on which to base a decision without these records is at odds with the ALJ's own finding that "[t]he claimant did not provided [sic] opinion evidence from a treating source." (AR, at 13.) The dearth of evidence in this case makes records from the Metropolitan Hospital all the more likely to be valuable.

### 5. Children's Services

The Report found that there are likely to be records pertaining to investigations of Corporan's home conducted by children's services. (Report, at 17.) These records, the Report notes, have potential to assist in assessing Corporan's health issues and capacity to work. (*Id.* at 33.) However, the Commissioner objects that these records do not qualify as "medical evidence" and are therefore outside the scope of the duty to develop the record.

On this ground, the Commissioner's argument has merit. To be sure, an ALJ is required to consider both medical and non-medical evidence in the record. *See Monette v. Astrue*, 269 F. App'x 109, 113 (2d Cir. 2008) (summary order). But the duty to develop extends only to a claimant's "medical history," or "records of [a claimant's] medical source(s)." 20 C.F.R. § 404.1512(d)(2). The records from children's services, while potentially relevant to the merits of Corporan's disability claim, are not medical records. The Commissioner's objection with regard to these records is accordingly sustained.

### 6. Examination by Dr. Alexander

Finally, the Report faulted the ALJ for considering the medical evaluation by Dr. Michael Alexander, a psychologist who acted as the SSA's consultative examiner, prior to attempting to obtain the documents missing from the record. (Report, at 39.) The Commissioner argues that it

acted within its discretion in ordering the consultative examination, and that the ALJ properly considered it in his decision denying Corporan benefits. (Def. Obj., at 15– 17.)

The Court adopts the Report's finding on this issue. Prior to evaluating evidence from a consultative source, the Commissioner must make a reasonable effort to obtain medical evidence from the claimant's treating physician or other treating health care provider. 42 U.S.C. § 423(d)(5)(b). Thus, the Commissioner's objection rests on the premise that the ALJ made a sufficient attempt to fill the glaring gaps in the record. As discussed above, he did not. The ALJ therefore erred in giving weight to Dr. Alexander's opinion.

### III.   Conclusion

For the foregoing reasons, Magistrate Judge Netburn's Report and Recommendation is hereby ADOPTED; the Commissioner's motion for judgment on the pleadings is hereby DENIED; and Corporan's motion for judgment on the pleadings is hereby GRANTED. This matter is REMANDED for further development of the administrative record.

The Clerk of Court is directed to close the motions at docket numbers 19 and 35 and to close this case.

SO ORDERED.

Dated: January 23, 2015
       New York, New York

_____
J. PAUL OETKEN
United States District Judge